A. M. GUTTERMAN & SONS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10458. Promulgated November 4, 1927.

1. BAD DEBTS.—Where petitioner ascertained a debt to be worthless to the extent of $15,000 and charged off same to that extent during 1921, *held* to be a proper deduction from gross income for that year.

2. INVESTED CAPITAL.—Adjustment of invested capital made by the Commissioner on account of income and profits taxes for prior years, held to be correct under section 1207 of the Revenue Act of 1926.

*E. E. Wakefield, Esq.*, *W. C. Magathan, Esq.*, and *J. Marvin Haynes, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

This proceeding results from the Commissioner's determination of a deficiency in the amount of $2,917.27 in petitioner's income and profits tax for the year 1921.

Petitioner alleges that the Commissioner erred in his determination—

(1) In disallowing a deduction for 1921, in the amount of $15,000, alleged to be that portion of a bad debt ascertained to be worthless and charged off during 1921.

(2) In reducing invested capital for income and profits taxes for years prior to 1921 paid subsequent to December 31, 1920.

(3) In reducing invested capital for income and profits taxes of the year 1920 or any other year paid during the taxable year 1921.

### FINDINGS OF FACT.

Petitioner is a Maine corporation with its principal place of business at Boston, Mass. During the year 1921 it dealt in sole leather and cut shoe soles, selling to jobbers of sole leather and shoe manufacturers. Prior to 1921 it had also dealt in shoe findings, that is, materials used in the manufacture of shoes such as upper leather, linings, felts, eyelets, laces, etc. Louis Gutterman was during 1921, and had been since 1912, the owner of substantially all of petitioner's stock. Also, Gutterman was president and treasurer of petitioner during 1921.

Since 1891, Louis Gutterman in various capacities has been engaged in the business of buying and selling shoe leather and findings and also in the manufacture of shoes. In 1919 he decided to engage in the manufacture of shoes and in September, 1919, Louis Gutterman, Coleman Hands, and Robert W. Marshall organized the Coleman-Robert Shoe Co., hereinafter referred to as the Shoe Company, a corporation with a capital stock of $25,000, paid in cash. Gutterman took 55 per cent of the stock and was treasurer of the Shoe Company. The Shoe Company leased one floor of a building in South Boston and the three stockholders immediately began to assemble the necessary equipment for the manufacture of shoes. The entire capital of $25,000 cash and some additional borrowed money was expended by the time actual manufacturing was commenced in

February, 1920. The business of the Shoe Company proved to be unprofitable due to the general depression in the shoe-manufacturing business during 1920, and in July, 1920, the plant was shut down. The plant remained intact, but idle during the balance of 1920 and all of 1921, during which time unsuccessful efforts were made to sell the plant as a whole, for most of the machinery in the plant had been leased from the United Shoe Machinery Co. and the balance of the equipment and materials on hand were more or less especially adapted to the manufacture of a certain type of men's shoes.

During the short time the Shoe Company was operating and also during a part of 1920 and during 1921 petitioner loaned the Shoe Company various sums of money to meet its expenses and at the end of the year 1921 the Shoe Company was indebted to petitioner in the amount of $25,805.

The assets and liabilities of the Shoe Company at December 31, 1921, were, as shown by the books, as follows:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $1,341.79 | Accounts payable, customers | $161.20 |
| Inventory | 9,498.53 | A. M. Gutterman & Sons Co. | 25,805.00 |
| Machine parts | 337.64 | Capital stock | 25,000.00 |
| Shoes | 40.00 | | |
| Factory and machinery | 5,582.71 | | |
| Power and transmission | 3,211.44 | | |
| Factory equipment | 5,543.01 | | |
| Lasts, dies, and patterns | 9,374.92 | | |
| Office furniture and fixtures | 557.87 | | |
| Deferred charges | 60.53 | | |
| Supplies | 213.84 | | |
| Total | 35,762.28 | | |
| Deficit | 15,203.92 | | |
| | 50,966.20 | | 50,966.20 |

However, the above figures represented the cost or book value of the assets in relation to the Shoe Company's plant as a whole at the time it was shut down in 1920. At the close of the year 1921, the equipment had greatly deteriorated due to the long period which the Shoe Company's plant remained idle.

The item of inventory ($9,498.53) consisted of leather, linings and various other materials partly cut up ready for the manufacture of a special type of shoe. Those materials were in a dried up and deteriorated condition, were not marketable and were not worth more than $2,000.

The item of machine parts ($337.64) consisted of various small parts for replacements in the machines used in manufacturing shoes and had but little value except in the operation of the plant.

The item of machinery ($5,582.91) consisted of machines bought by the Shoe Company, such as sewing machines, which were in addi-

tion to the machinery leased from the United Shoe Machinery Co. Such machinery was salable at secondhand values unless the plant was sold as a unit.

The items of power and transmission ($3,211.44) and factory equipment ($5,543.01) consisted of pulleys, belts, motors, shelves, benches, racks, shipping facilities, etc., especially fitted for the rooms occupied by the Shoe Company and were of little, if any, value except as a part of the plant as a unit. A blower system for ventilation especially fitted to that plant and which cost about $1,600 to install is included in the equipment.

The items of lasts, dies and patterns ($9,374.92) were for the special shoes manufactured by the Shoe Company and were of no value unless the plant was again operated on the same basis as before it shut down.

Louis Gutterman was familiar with the plant and equipment of the Shoe Company at all times and had endeavored unsuccessfully to sell the plant of the Shoe Company. On the basis of the facts as above set out he had the account of the Shoe Company charged off to the extent of $15,000, on the books of A. M. Gutterman & Sons Co. in closing that company's books for the year 1921. In its return for the year 1921 the A. M. Gutterman & Sons Co. took a deduction to the amount of $15,000 as a bad debt, which the Commissioner disallowed.

In 1922, the assets of the Shoe Company were taken over by A. M. Gutterman & Sons Co., the principal creditor, and later during the same year said assets were charged off the books of the latter company and charged to Louis Gutterman, personally, in the amount of $25,010. Louis Gutterman never paid the company anything and the reason for the book transaction was to enable Louis Gutterman to show possible prospective purchasers of said assets the cost of same and also to enable him to negotiate individually. During the latter part of 1922 the Hutton-Johnson Co. was formed, Louis Gutterman contributed the assets of the old Shoe Company, and two other men each contributed $12,500 cash. The $50,000 stock of the new company was divided equally between the three. A considerable portion of the $25,000 cash was spent in putting the old Shoe Company's plant in condition for operation, but it was never operated and in 1923 the Hutton-Johnson Co. sold out to the Diamond Shoe Co. for $8,500. Louis Gutterman received about $5,500 in the final distribution.

For the year 1918, petitioner paid an additional income and profits tax in the amount of $8,094.87 which the Commissioner deducted from invested capital in his computation of petitioner's tax liability and in determining the deficiency for the year 1921.

## OPINION.

TRUSSELL: Upon the record the petitioner's deduction in the amount of $15,000 as the extent to which the debt in question was not recoverable, the said debt having been ascertained to be worthless to that extent and having been charged off its books in closing the same for the year 1921, is a proper deduction and should be allowed under section 234 (a) (5) of the Revenue Act of 1921. See *Appeal of Stieglitz, Treiber Co., Inc.*, 1 B. T. A., 452.

The adjustment of petitioner's invested capital for the year 1921 as made by the Commissioner on account of income and profits taxes for years prior to 1921 must be sustained under section 1207 of the Revenue Act of 1926.

*Judgment will be entered upon 15 days' notice, pursuant to Rule 50.*

Considered by LITTLETON, SMITH, and LOVE.